FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 OCT 28  PM 5: 07

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ZACHARY A. COOPER** | **CIVIL ACTION** |
| **VERSUS** | **NO:    04-1906** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "K" (4)** |

### REPORT AND RECOMMENDATION

**I.    Introduction**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to **42 U.S.C. § 405(g)**.  The Commissioner denied Zachary Cooper's claim for Supplemental Security Income Benefits ("SSI")  under Title II of the Social Security Act,  42 U.S.C. § 1382(c).

The matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C.  §  636(b)  and  Local  Rule  19.02E(b),  for  the  submission  of  Proposed  Findings  and Recommendations.

**II.    Factual Summary**

The claimant, Donna Fields,  filed this appeal on behalf of her minor son, Zachary a five-year-old child whose is allegedly disabled from bronchitis and asthma.  Zachary was two years old at the time the application for benefits was filed, and three years old at the time of the final administrative decision. (Tr. 21, 52).

Fields filed the application for benefits on March 8, 2002 and the application was denied on

Fee_____
Process_____
Dktd_____
CtRmDep_____
Doc. No _____

June 28, 2002. (Tr. 14). On August 9, 2002 Fields filed a request for a hearing which took place before Administrative Law Judge ("ALJ") Mark R. Dawson on November 19, 2002. (Tr. 34-38).

On September 11, 2003, the ALJ concluded that Zachary was not disabled under the Social Security Act. (Finding 6, Tr. 21). He found that Zachary suffered from asthma and bronchitis; both medically determinable, "severe" impairments meeting the duration requirement of the regulations. (Finding 2, Tr. 21). He also found Zachary's mother reasonably credible. (Finding 3, Tr. 21). However, he found that Zachary's impairments neither singly, nor in combination, met or equaled the criteria of any of the listed impairments at 20 C.F.R. § 404. Supbpt.P., app.1. (Findings 4 & 5, Tr. 21).

Fields sought review of the decision on October 22, 2003. ( Tr. 10). She submitted new evidence but on June 18, 2004, the Appeals Council denied her request for review. ( Tr. 4-10). She now seeks review of the ALJ's decision in this Court.

Fields contends that the ALJ erred in reviewing her son's application by (1) failing to explain why Zachary's asthma did not meet or equal a listed level impairment and (2) suggesting that Zachary did not meet a listed level impairment because the Emergency Room treatment would have been unnecessary if she had followed the prescribed treatment.

The Commissioner concedes that the ALJ failed to properly articulate the requirement of the relevant sections but contends that the evidence of record does not support Field's allegation that her son meets the listing level requirements. The Commissioner further contends that Field's speculative statement does not constitute error and that even if all of Zachary's hospitalizations and ER treatments were considered, no disability was established. Having set forth the position of the parties, the Court will proceed with its analysis.

**III.** **Standard of Review**

### A.   **Statutory and Regulatory Framework**

The Social Security Act provides that a child under 18 is "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less *than 12 months.*" 42 U.S. C. § 1382c(a)(3)(C)(I).

The Commissioner follows a three step process in determining childhood disabilities. *See* 20 C.F.R. § 416.924 (2004). A child qualifies for SSI benefits if the Commissioner determines that (1) the child is not engaged in substantial gainful activity; (2) the child has a medically determinable severe impairment; and (3) the impairment meets, medically equals, or functionally equals the severity of an impairment listed at 20 C.F.R. § 404. Supbpt.P., app.1 (" listed impairment(s)") and meets the durational requirement.

### B.   **Judicial Review**

The role of this Court on judicial review under 42 U.S.C. § 405(g) is limited to determining whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards when evaluating the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court cannot re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v. Chater*, 67

F.3d 552, 555 (5th Cir. 1995). It must do more than create a suspicion of the existence of the fact to be established. *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973). A single piece of evidence will not satisfy the substantiality test if the ALJ ignores, or fails to resolve, a conflict created by countervailing evidence. Evidence is not substantial if it is overwhelmed by other evidence, particularly evidence offered by treating physicians. *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Finally, the Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnosis and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history." *Hendricks v. Apfel*, No. 99-1212, 2000 WL 174884, at *3 (E.D. La. Feb. 14, 2000)(citing *Martiniez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

## IV.   Analysis

### A.   Failing to explain why Zachary's asthma did not meet Listing Level 3.03B

Fields contends that the ALJ erred when he did not fully explain why Zachary's asthma did not meet the Listing Level 103.03(B). The Commissioner contends that although the ALJ did not spell out the criteria in his opinion, the criteria speak for themselves and the evidence of record does not support the plaintiff's claim that the listing levels were met.

Under 20 C.F.R. § 404(P)(Apx.1)(B)(103.03) a child meets the listing requirements for asthma when the evidence shows the child has either:

> A.   $FEV_1$ equal to or less than the value specified in table I of 103.02A
>
> Or

B.      Attacks (as defined in 3.00 C)[1], in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks;

Or

C.      Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:

1.      Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or

2.      Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period;

Table I of 103.02(A) requires a forced expiratory valve one second test ("FEV1") result for a child of Zachary's size of .65. However, the medical records contain no evidence that an FEV1 test was ever performed. Nor does the evidence reveal that Zachary had pulmonary hyerpinflation or that he took corticosteroids averaging more than five days per month for at least three months. Therefore, he cannot satisfy the requirements under section C of 103.03. The next inquiry is whether Zachary satisfied the listing requirements under section B.

B.      **Number of Asthma Attacks**

---

[1]3.00C. *Episodic respiratory disease.* When a respiratory impairment is episodic in nature, as can occur with exacerbations of asthma . . . the frequency and intensity of episodes that occur despite prescribed treatment are often the major criteria for determining the level of impairment. Documentation for these exacerbations should include available hospital, emergency facility and/or physician records indicating the dates of treatment; clinical and laboratory findings on presentation, such as the results of spirometry and arterial blood gas studies (ABGS); the treatment administered; the time period required for treatment; and the clinical response. Attacks of asthma . . . are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

The record shows that Zachary was initially treated on May 7, 2001, when his mother took him to Kenner Regional Medical Center because of exacerbation of his asthma condition. He presented with symptoms of wheezing, coughing, and congestion. (Tr. 101). His visit lasted for one-and-half hours and the treating physician prescribed Augmentin[2] and Albuterol[3] and instructed him to see his doctor. (Tr.102). His x-ray was not remarkable and there was no evidence of pleural reaction, pneumothorax[4], pneumomedistinum[5], or interstitial emphysema.

On May 19, 2001, he was taken to the East Jefferson General Hospital Emergency and later transferred to Children's Hospital. (Tr. 160). He presented with a history of shortness of breath, coughing, wheezing, and congestion. (Tr. 149). Chest x-rays were done and were within normal limits. Dr. Peterson noted that Zachary's lungs were expanded and clear bilaterally without evidence of infiltrates[6] or effusions. *Id.* Dr. Peterson further noted that the visualized osseous structures were not remarkable. *Id.*

The next day, Zachary was transferred to Children's Hospital for specialized treatment of his

---

[2]Augmentin is a combination of amoxicillin and clavnulanic acid used to treat infections caused by bacteria. *See* United States Nat'l Library of Med. & Nat'l Inst. of Health, Medline Plus (hereafter, *Medline Plus*), Amoxicillin and Clavulanic Acid, http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a685024.html.

[3]Albuterol is a beta-agonist used to treat wheezing, shortness of breath, and troubled breathing caused by asthma, chronic bronchitis, emphysema, and other lung diseases. *See Medline Plus*, Albuterol, http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a682145.html

[4]Pneumothorax occurs when air or gas is collected around the lungs, and is symptomatic of, among other things, asthma. *See Medline Plus*, Pneumothorax, http://www.nlm.nih.gov/medlineplus/ency/article/000087.htm

[5]Pneumomedistinum occurs when air is present between the lungs. *See Medline Plus*, Pneumomedistinum, http://www.nlm.nih.gov/medlineplus/ency/article/000084.htm

[6]"Infiltrate" is a generic term not implying a specific diagnosis. Rather, infiltrate is the collection of fluid where it should not exist. For example if a person receives an intravenous treatment and the needle slips out of the vein, the infused fluid collects under the skin and is termed an "infiltrate." This series of events is termed an "infiltration." In the lungs there are three main causes of infiltration: cancer, infection, and congestive heart failure. Therapy to stop the infiltrate must necessarily address the cause. In this context an infiltrate would be a symptom of a disease rather than a disease per se. http://www.medical-library.net/phorum/framer.html?/phorum/read.php

medical condition. (Tr. 88). The nurse's notes indicate that at the time of transfer he was sleeping and not in respiratory distress. (Tr. 158). The hospital performed a chest x-ray on Zachary which revealed no acute infiltrates. (Tr. 90). Dr. Richard, the treating physician at Children's Hospital, questioned Zachary's earlier diagnosis of asthma by the emergency room physician at East Jefferson because Fields indicated that Zachary had no history of wheezing. *Id.* Zachary was discharged the next day and prescribed medication, including Augmentin and Alupent, for the treatment of his condition. *Id.* The visit for May 19 and May 20 , 2001, is counted as two visits according to the regulations because Zachary was hospitalized for longer than 24 hours.

On July 29, 2001, Zachary returned to Kenner Regional Medical Center for medical treatment for his coughing and congestion. (Tr. 99). This visit lasted less than one hour. (Tr. 100). Dr. Zaheri concluded there was exacerbation of Zachary's asthma and prescribed Albuterol and Benadryl. (Tr. 99).

On September 15, 2001, Zachary saw Dr. Khalaf at East Jefferson General Hospital. Zachary presented with a cough, congestion, and wheezing that was not improved with the use of inhalers. (Tr. 143). He was vomiting and post-tussive with mild diarrhea but had no change in his mental status. *Id.*

On examination, his nose and throat were clear and his mucous membranes were pink and moist. (Tr. 143). His neck was supple and a chest x-ray revealed no acute infiltrates. *Id.* He was treated with IV fluid, Solu-Medrol[7], and Rocephin[8] which improved his condition. *Id.* Zachary's

---

[7]Solu-Medrol is the brand name of a corticosteroid used to relieve inflammation. *See Medline Plus*, Methylprednisolone Sodium Succinate Injection, http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601157.html

[8]Rocephin is the brand name of an antibiotic used to treat infections. *See Medline Plus*, Ceftriaxone Sodium Injection, http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a685032.html.

respiratory rate was normalized at 22 and he was scheduled for discharge.[9]  *Id.*

On October 9, 2001, Zachary returned to East Jefferson General Hospital for emergency treatment.  On arrival he was coughing, wheezing, and had a fever.  On examination, he was alert but wheezing.  He was prescribed Amoxicillin[10], Ventolin, and Prelone.  He was diagnosed with otitis media, an inner ear infection, and bronchitis. (Tr. 163).  Zachary's x-ray revealed that his lungs were within normal limits without evidence of acute consolidation.  The treating physician noted minimal interstitial changes compatible with a history of asthma.  (Tr.131).

The next day, Fields telephoned the hospital and indicated that Zachary was doing "so, so" and that he continued to experience heavy breathing.  She reportedly told the nurse on the phone that she was applying for Medicaid as she had no insurance.  (Tr. 132).

Therefore, Zachary went to the hospital six times during a twelve month period.  However, under the regulations it is insufficient to simply count the number of visits.  The regulations require that these visits are because of "attacks" as defined by 20 C.F.R.§ 404(P)(Apx.1)(A)(3.00)(C).  The regulations define attacks as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting."  20 C.F.R.§ 404(P)(Apx.1)(A)(3.00)(C).  Further, the claimant must show "information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs" and for asthma, "the medical evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction."  *Id.*

---

[9]A normal respiratory rate for preschool children is 20-30 breaths per minute.  *See* Family Practice Notebook, Respiratory Rate, http://www.fpnotebook.com/LUN54.htm.

[10]Amoxicillin is an antibiotic used to treat infections caused by bacteria.  *See Medline Plus*, Amoxicillin, http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a685001.html.

First, the Court notes that there are no spirometric results establishing a baseline in the record. Second, the court notes that there is little evidence in the record documenting adherence to a prescribed regime of treatment. The record in this case shows only regular pediatric treatment or examinations by Dr. Sam Brown of Children's Hospital from July 6, 1999, through October 17, 2000. The record contains no evidence showing that Fields took Zachary to the doctor for regular treatment and monitoring of his asthmatic condition, therefore she could not provide any evidence documenting adherence to a prescribed treatment or regime.

In fact, Zachary's condition was initially diagnosed by an emergency room physician and there is no record indicating that his mother went to his pediatric doctor for follow up confirmation of the diagnosis or treatment as instructed. (Tr. 192). The record shows only that Fields sought emergency treatment when Zachary's condition was exacerbated. In the absence of proof that she adhered to a prescribed regimen of treatment, the Court finds that the ALJ's opinion is based upon substantial evidence.

C.      **The ALJ's suggestion that Fields did not  follow the prescribed treatment.**

Next, Fields contends that the ALJ did not clearly state in his finding why Zachary did not meet the listing level requirement. Therefore, she believes that he reached his conclusion by assuming that Fields failed to follow the prescribed treatment because she could not afford it. Fields alleges this conflicts with the Fifth Circuit's conclusion in *Lovelace v. Bowen* that if a "claimant cannot afford the prescribed treatment or medicine . . . the condition that is disabling in fact is disabling in law." 813 F.2d 55 (5th Cir. 1987) (internal quotations omitted).

The Commissioner contends that Fields' speculation about the reasoning of the ALJ does not constitute error.

The record shows that the ALJ provided the following statement in his opinion,

> She further testified that she could not afford the claimant's medication, so she takes him to the emergency room.

However, after reviewing the ALJ opinion the Court does not find that this statement alone supports Fields' supposition that her failure to follow the prescribed treatment is the reason why the ALJ found that Zachary was not disabled within the meaning of the regulations. As noted earlier, there is no evidence of record that Fields had a prescribed regimen of treatment as she only sought emergency medical treatment for Zachary. To the extent the ALJ made such an assumption, it would not affect the propriety of his opinion because Fields failed to present sufficient evidence warranting a finding of disability due to asthma. Therefore the ALJ's finding that Zachary Cooper is not disabled is based upon substantial evidence.

## V.    Recommendation

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Zachary Cooper's Supplemental Security Income Benefits be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a Magistrate Judge's Report and Recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

Houston, Texas, this 25th day of October 2005

KAREN WELLS ROBY
**UNITED STATES MAGISTRATE JUDGE**